MORRIS SENTLIFFER ET AL., PLAINTIFFS-APPELLANTS, v. NORMAN J. JACOBS, DEFENDANT-APPELLEE.

Submitted December 6, 1912—Decided May 9, 1913.

1. Rule 90 of this court, requiring in appeals from District Courts a specification of the determinations or directions of the District Court with which appellant is dissatisfied in point of law, and providing that the appeal shall be heard and determined solely upon the points of law so specified, calls for no more than is required by way of assignments of error in the review of judgments according to the course of the common law by writ of error, or by way of reasons where the review is by *certiorari*.
2. In appeals from District Courts, an alleged error not specified pursuant to rule 90 will not be considered. If the judgment cannot be reversed on any ground specified, it will be affirmed; if there be no specification, the practice is to dismiss the appeal.

3. A demise of real estate to two or more tenants without more, imposes a liability on each tenant for the entire rent. *Semble*, that such demise creates a tenancy in common of an estate for years.

4. Under such circumstances, an apportionment by the tenants as between themselves of the part to be occupied by each and the respective shares to be contributed by each to the rent, does not legally create the relation of landlord and tenant between them, even though it be agreed that one tenant shall primarily pay the whole rent and be reimbursed by the other for his share.

Appeal from District Court.

Before Justices TRENCHARD, PARKER and MINTURN.

For the appellant, *Samuel Kalisch, Jr.*

For the appellee, *Jacob L. Newman.*

The opinion of the court was delivered by

PARKER, J. This appeal was ordered to be dismissed for failure of the appellant to comply with rule 90 of this court, adopted June 4th, 1907, providing that "in all appeals taken from judgments rendered in District Courts the appellant shall, within ten days from the expiration of the time limited by the statute for the giving of his notice of appeal, file with the clerk of the Supreme Court a brief specification of the determination or directions of the District Court with respect to which he is dissatisfied in point of law, a copy of which shall, upon the argument of the appeal, be furnished to the court with the state of the case and the copy of the judgment record, and the appeal shall be heard and determined solely upon the points of law so specified." Subsequently, on application made on behalf of appellant and for special reasons deemed satisfactory by the court after argument, the appellant was permitted to file out of time the required specification, and the appeal was thereupon reinstated. We have deemed it proper, as an intimation to the bar, to quote and comment on the rule, which does no more than require what has always been required by way of assignment of errors in

cases removed by writ of error; reasons in those reviewed by *certiorari;* and what corresponds to "grounds of appeal" in appeals under the Practice act of 1912. By whatever name called, it is in all these proceedings a statement apprising the appellee and the court what errors are claimed to have taken place below, to the injury of appellant, and the rule is universal that the appellant, plaintiff in error, or prosecutor in *certiorari,* as the case may be, is not entitled to a consideration by the court of any ground of error not so specified, nor of anything specified that is not matter of law. The cases are collected in 1 *N. J. Dig. "Appeal and Error,"* § 151, sections 265 *et seq.* If the judgment cannot be reversed on any ground specified it will be affirmed. *Champlin* v. *Barthold,* 53 *Vroom* 13. If there be no specification at all, the practice has been to dismiss the appeal as for a default in pleading. This action has been taken probably several times at every term of this court since the rule was adopted, but it has not hitherto seemed necessary to have these dismissals (on a pure question of procedure) reported. Proper practice requires a uniform enforcement of the rule.

Coming now to the merits of the appeal: The suit was in replevin to recover possession of goods of plaintiffs seized under a distress warrant made by defendant. The point in dispute is whether plaintiffs were tenants to defendant at the time of the distress. If so, the money that plaintiffs owed defendant (as the court could find under the evidence), was unpaid rent, the distress was lawful, and the judgment for defendant was correct. The controversy turns on the existence or non-existence of the relation of landlord and tenant.

The evidence shows that about November 10th, 1911, one Crossley as attorney in fact rented a store property to the parties to this suit by a written lease, describing himself as party of the first part, and Norman J. Jacobs (the defendant) and Morris Sentliffer & Company (the plaintiffs), party of the second part, for an indefinite term, rent payable on the 15th of each month, and fixed at $625 a month. The arrangement between the Sentliffers and Jacobs was that Jacobs

should occupy exclusively a specified part of the demised premises and (as between them) be responsible for $225 of the rent, and the Sentliffers should occupy exclusively the remainder of the premises and be responsible (as between them and Jacobs) for the remaining $400 of the rent. In January, 1912, the landlord reduced the rent to $500 a month, of which Jacobs contributed one-third and the Sentliffers two-thirds. The landlord refused from the beginning to deal with the parties separately as to their shares of the rent, so at first Sentliffer & Company paid it all and Jacobs reimbursed them for his share; then after the reduction Jacobs paid it all and the Sentliffers reimbursed him for their share, until in April the Sentliffers defaulted and Jacobs thereupon distrained on the property described in the writ of replevin.

Under the original arrangement, and until the January reduction, it seems plain that the parties were tenants in common of an estate for years. At common law it would have been a joint tenancy, whether the estate were for years or of freehold, unless expressly specified as a tenancy in common. 2 *Bl.* 179. Our statute of 1812 reversed this rule and provided that "no estate" should be considered an estate in joint tenancy unless it were set forth in the grant or devise creating such estate, that a joint tenancy was intended. *Rev. Stat.,* p. 650; *Rev.,* p. 167; *Gen. Stat.,* p. 1880. This act being classified by compilers under the title "Conveyances" was re-enacted in the revised Conveyance act of 1898 as section 15. *Pamph. L.* 1898, p. 675; *Comp. Stat.,* p. 1538. Whether this section is lawfully covered by the title of that act is immaterial, for if not, the constitutional infirmity extends also to the specific repealer (*Pamph. L.* 1898, p. 711), and the old act remains in force. *Bouvier* v. *Railroad Company,* 38 *Vroom* 281; see *Lauter & Co.* v. *O'Toole,* 48 *Id.* 29. The act of 1812 is as broad as the rule which it was intended to change, and may be considered, notwithstanding the words "grant or devise" as applicable to estates for years, though each tenant in this case was clearly bound to the landlord for the whole rent. 24 *Cyc.* 917; 18 *Encycl. L.* (2d ed.) 607. Whether they were joint tenants or tenants in common is probably unim-

portant. The real question is, what was the trial court justified in finding as their relation *inter sese* after the January reduction? As to this, the evidence is contradictory. Assuming that up to that time they were simply co-tenants under Crossley, we agree with counsel for appellee that there was evidence to support a finding by the trial judge that just before the reduction of rent one of the Sentliffer partners told Jacobs that they could not make their business pay and were going to move; that Jacobs assented; then went to see Crossley, the landlord, and arranged a new lease of the entire property to himself, and so notified Sentliffer, who on his part assented and said he would move the following Monday, but did not, and at that time said he wished to stay; whereupon (as the court might have found) it was agreed that the Sentliffers should stay, paying Jacobs two-thirds of the $500 rent, or $333.33 a month. The fact that Jacobs thereafter made the principal payments and the Sentliffers the subordinate ones, reversing the previous arrangement, rather corroborates this view. If the court had so found the facts, and if we assume their legal sufficiency to constitute a surrender, it would be plain that from the time of this change the Sentliffers became subtenants of Jacobs of part of the premises instead of co-tenants with him of the whole; and it would then follow that Jacobs was entitled as landlord to distrain, and that the judgment below was right.

The difficulty in the case arises from the peculiar language of the finding by the trial judge. There was a stenographer below, and consequently the state of the case consists of the stenographic transcript, and the findings of fact must be gathered from the judge's oral decision. He said:

"The original lease was not surrendered at any time to Mr. Crossley, either in writing or by operation of law, so I feel clear that Mr. Crossley is still the landlord and that they are tenants in common. The question is whether the agreement which they made between themselves designating the parts of the premises which each should occupy, fixing the proportion of the rent which each should pay, fixing the term of the tenancy and fixing also the time of payment—

the question is whether that constitutes a lease as between themselves. It seems to me in accordance with the general principles of law to hold that such a setting apart of portions of the premises by the tenants in common, fixing the terms, amount of rent, &c., was practically a subletting of that part of the premises. Certainly, each tenant had, under the lease, the right to the whole premises, and when he gave up that right he gave to the other tenant the exclusive tenancy. I don't see why that does not create the relation of landlord and tenant, just as much as between two strangers, although it is not so clear a case. As a matter of fact Jacobs paid $500 for the rent and Sentliffer did not pay Jacobs his proportion of it; and I hold that Jacobs had a right to distrain on the goods of Sentliffer, and therefore give judgment in this case for the defendant."

It will be noted that he finds that the original lease was not surrendered, and that the relation of landlord and tenant arose, not out of a new lease to Jacobs alone and a sublease by him to Sentliffer, but out of a continuance of the original lease at a reduced rent and a new apportionment of that rent as between the parties. This finding of fact was also open to the judge on the evidence before him, and is not reviewable here. But on such a finding the judgment has in our view no legal support. The rule applied seems to have been that in case of a letting to two lessees, jointly, or in common, each being liable for the whole rent, but as between them each being responsible for a specified part of it, the tenant that pays it all becomes the landlord of the other and may distrain for what he has advanced for him on account of rent. If this be so, then if the Sentliffers had paid all the April rent, they could have distrained on Jacobs' goods for his share of it, and either tenant would thus become the landlord of the other upon advancing the whole rent. Such a situation would be absurd. The fact, if it be a fact, that Jacobs agreed with Sentliffer to pay all the rent in the first instance has no bearing on the legal situation. It was evidential, as already pointed out, that Jacobs sublet to Sentliffer; but it was not conclusive, and the court found he did not so sublet in fact.

· Upon the findings of fact that the original lease was not surrendered, that the parties were still tenants in common under Crossley, that they agreed between themselves as to occupancy in severalty and proportionate responsibility for shares of rent, the advancement by Jacobs for Sentliffer & Company gave him no further right against them than to recover back the money as paid for their use, in an ordinary action at law. There was no right of distress, and consequently the judgment below should have been for the plaintiffs. The judgment will be reversed and judgment entered in this court in favor of appellants. *Pamph. L.* 1910, *p.* 236; *Comp. Stat., p.* 2016, *pl.* 213a.